STATE OF NORTH CAROLINA v. TIMOTHY CARNESS AUTRY

No. 468A86

(Filed 3 February 1988)

1. **Rape and Allied Offenses § 4.3— virginity of prosecutrix—cross-examination properly excluded**

    Where a rape and sexual offense victim testified that defendant asked her if she were a virgin and she answered yes, the trial court properly denied defendant's motion to be allowed to cross-examine the victim concerning her statement that she was a virgin since (a) the victim did not in fact testify as to whether she was a virgin, and her testimony was offered only to lay a proper foundation for additional evidence of defendant's statement to the victim of his announced intent, and (2) defendant's requested cross-examination was barred by the rape shield provisions of N.C.G.S. § 8C-1, Rule 412(b).

2. **Searches and Seizures § 10— improper warrantless search of gym bag—admission of seized items—harmless error**

    Assuming arguendo that an S.B.I. agent's warrantless search of a gym bag belonging to defendant which was seized from the office of defendant's employer violated defendant's constitutional rights and that evidence found in the bag was improperly admitted at defendant's trial for kidnapping, rape and sexual offenses, the erroneous admission of such evidence was harmless beyond a reasonable doubt where the evidence of defendant's guilt, without regard to any evidence or testimony concerning the gym bag or its contents, was overwhelming.

3. **Criminal Law § 111.1— defendant's decision whether to testify—improper instruction—harmless error**

    The trial court misstated the law in its instruction to defendant concerning his decision as to whether to testify when the court stated that the prosecution "could, on good faith, ask you about prior misconduct, whether it

resulted in convictions in court if they had some good faith reason to ask those questions, and you would be under oath to answer the questions truthfully," since under Rule of Evidence 608(b) only those acts of misconduct probative of defendant's character for truthfulness or untruthfulness could be inquired into on cross-examination, and defendant would retain his right to assert his privilege against self-incrimination as to specific criminal misconduct that related only to his credibility. Assuming arguendo that the trial court's error constitutes a violation of defendant's constitutional right to take the stand in his own behalf, such error was rendered harmless beyond a reasonable doubt by the overwhelming evidence of defendant's guilt and by defendant's access to and actual conference with his attorney. N.C.G.S. § 15A-1443(b).

BEFORE *Watts, J.,* and a jury at the 17 March 1986 Criminal Session of Superior Court, SAMPSON County, defendant was convicted of three counts of first-degree sex offense, two counts of first-degree rape, one count of first-degree kidnapping, two counts of second-degree sexual offense, one count of second-degree rape, and one count of impersonating a law enforcement officer. Judge Watts sentenced defendant to life imprisonment on each of the first-degree sex offense and first-degree rape convictions, to forty years each on the first-degree kidnapping conviction and the first of the second-degree sex offense convictions, to twelve years each on the second of the second-degree sex offense convictions and the second-degree rape conviction, and, finally, to two years on the impersonating a law enforcement officer conviction. Defendant appeals his life sentences as of right pursuant to N.C.G.S. § 7A-27(a). His motion to bypass the Court of Appeals on his appeal of the remaining convictions and accompanying sentences was allowed by this Court on 25 July 1986. Heard in the Supreme Court 12 November 1987.

*Lacy H. Thornburg, Attorney General, by Sylvia Thibaut, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Geoffrey C. Mangum, Assistant Appellate Defender, for defendant-appellant.*

MEYER, Justice.

On his appeal to our Court, defendant brings forward three assignments of error relative to the guilt-innocence phase of his trial. Having considered the entire record and each of defendant's assignments in turn, we find no prejudicial error in defendant's trial. Accordingly, we leave undisturbed defendant's multiple convictions and accompanying sentences.

Each of defendant's multiple convictions arose from a single criminal episode which occurred on 13 and 14 November 1985. Because resolution of the issues presented in this case turns so substantially on the nature and the volume of the evidence against this defendant, a lengthy recitation of the facts is called for. Accordingly, the evidence presented at trial tended to show the following series of events. On 13 November 1985, the victim, a nineteen-year-old female, was working at the checkout counter in an Eckerd's drug store in Sampson County, North Carolina. Between 6:00 p.m. and 8:00 p.m. on that evening, defendant, whom the victim did not know, entered the store on three separate occasions. On two of these occasions, defendant spoke to the victim briefly, and on one of these occasions, defendant asked the victim if any photographs had been developed for a customer named "Autry." The victim later positively identified defendant as the man who was in the Eckerd's drug store on the evening of 13 November 1985.

At 9:00 p.m. on that same evening, the victim got off work, got into her car, and departed for home. Minutes later, as she turned onto the road leading to her home, she noticed a car following very closely behind her. When the driver of the car behind her subsequently turned on a blue flashing light and emergency flashing lights, believing it to be a police car, the victim pulled her car over to the side of the road. A man whom the victim recognized as the man she had seen in Eckerd's got out of the car and came up to the driver's side of her car. Defendant told the victim that he was an undercover police officer and that she had been driving too fast. After looking at her license, however, defendant told the victim that he would let her go this time, and both defendant and the victim departed.

A short time later, defendant, who was still following the victim, once again turned on his flashing lights. The victim pulled over once more. On this occasion, defendant told the victim that there was a problem with her insurance which would necessitate her following him "so they could go straighten everything out." Told that she would not be allowed to call her parents first, the victim followed defendant to an abandoned store. Once there, defendant told the victim that she would have to leave her car there and accompany him to meet other police officers. Believing defendant to be a police officer, she did as she was told. She later

described defendant's vehicle as a white car with a burgundy interior.

As the victim and defendant drove along, the victim repeatedly asked for and was denied the opportunity to call her parents. At one point, assuring her that it was just "procedure," defendant pulled off the road, handcuffed the victim behind her back, and fastened her seat belt. Eventually, saying that he knew some game wardens who would be down there, defendant turned onto a dirt path and proceeded deep into a wooded area. At that point, defendant got a gun out of the trunk of the car and showed it to the victim. Subsequently, when some hunters came upon defendant's car and shone a twelve-volt spotlight on and into it, defendant restarted his vehicle and drove the victim down another dirt path in the woods. Two of these hunters later clearly identified defendant as the driver of the vehicle they had seen that night.

Stopping once again, defendant tightened the victim's handcuffs and began touching her. He then removed all of her clothes. Defendant asked the victim if she was a virgin and she told him yes. Defendant then told her that he was going to "bust that cherry." Over a period of three to four hours, defendant forced the victim to perform oral sex on him, forced her to have vaginal and anal intercourse with him, and forcibly performed oral sex on her. After falling asleep on top of the victim for a period of time, defendant awoke and forced the victim to have vaginal intercourse with him once again.

Defendant then drove the victim to a nearby abandoned house. Defendant carried the victim inside the house and placed her on the floor in an upstairs room. There, defendant forced the victim to have anal, vaginal, and oral intercourse with defendant once more. Leaving the room momentarily, defendant returned with a needle and a syringe and proceeded to give her a shot in the hip. The victim fell asleep shortly thereafter, not to awake until around 8:30 a.m. or 9:00 a.m. on the morning of 14 November.

Upon awaking, the victim, still naked and handcuffed, discovered that defendant had tied her legs with a rope and put a handkerchief around her mouth. Nevertheless, she managed to get out of part of the rope and to escape out the back of the house. She made her way to a neighboring house where she received clothing and other assistance, apparently from a Mrs.

Starling. Mrs. Starling called two of her sons, Donald Starling and M. F. Starling, who came immediately to the house to help their mother render aid to the victim.

Joanne Starling, wife of M. F. Starling, testified that she accompanied her husband when he went to his mother's house in response to her call. She stated that the victim told her that defendant had been driving a white car. She stated further that, in response to the victim's description, she returned to the dirt road leading to the abandoned house. While there, she saw a white car pull off the side of the road by the abandoned house.

Mr. Somboon Kachaenchai, defendant's employer, testified at trial that he managed Vira Farms, a Sampson County hog farm. He saw defendant on the morning of 14 November and mentioned that defendant came in late to work that day. Also on that day, defendant asked if he could leave work for "some important business" and Mr. Kachaenchai agreed. Defendant later returned and left a black gym bag in the business office at Vira Farms. Mr. Kachaenchai, in the presence of Mr. Larry Melvin, another employee of Vira Farms, opened the gym bag and saw a bottle or two of pig tranquilizer, syringes, needles, a survival knife, and some nylon string. After opening and looking at the contents of the bag, Mr. Kachaenchai and Mr. Melvin reclosed the bag.

At trial, pursuant to evidence showing these and other highly incriminating facts, defendant was convicted by a jury of the aforementioned crimes. In his appeal to our Court, defendant assigns three specific errors concerning his multiple convictions: first, that the trial court committed reversible error in denying defendant's request to cross-examine the victim about her testimony that she was a virgin; second, that the trial court committed reversible error in denying defendant's motion to suppress evidence seized without a warrant from his gym bag; and third, that the trial court committed reversible error in instructing defendant on the legal consequences of his decisions as to whether to testify or offer other evidence in his own behalf. We deal with each assignment of error in turn.

I.

[1] In his first assignment of error, defendant asserts that the trial court committed reversible error in denying defendant's re-

quest to cross-examine the victim about her testimony that she was a virgin. At trial, during the direct examination of the victim by the prosecutor, the following exchange occurred:

> Q. [Name of the victim], did he ever make any statement or any inquiry as to whether you had ever engaged in sex previously?
>
> MR. BACON: Objection, motion to strike.
>
> COURT: Overruled, in my discretion I will permit Counsel to lead the witness.
>
> A. Yes sir.
>
> Q. What did he say to you or what did he say to you, [name of the victim]?
>
> A. He asked me if I was a virgin and I said yes.
>
> COURT: What was the answer?
>
> WITNESS: I said yes.
>
> MR. BACON: Objection, motion to strike.
>
> COURT: Motion to strike denied.
>
> Q. What did you say after he asked you if you were a virgin and you told him yes?
>
> A. He said that he was going to bust that cherry.

Later, when defendant moved to be allowed to cross-examine the victim concerning her statement that she was a virgin, the trial court, citing the rape shield provisions of Rule 412 of the North Carolina Rules of Evidence, denied the motion. Defendant contends that the trial court's application of the rape shield provisions in the case at bar prevented correction of false testimony by the victim and was therefore fundamentally unfair and violative of his constitutional right to confront his accuser. We do not agree.

The trial court acted properly in denying defendant's motion. First, a close review of the testimony in question reveals that the State did not ask, and the victim did not in fact testify, as to whether she was a virgin. On the contrary, the victim testified

only to what defendant asked her and to what she told defendant in response to his question on the night of the crime. The State clearly elicited this testimony, not to establish before the jury whether the victim was a virgin, but to lay a proper foundation for the additional evidence of defendant's statement of his announced intent, i.e., that defendant next told the victim that "he was going to bust that cherry."

Second, and perhaps more important, the trial court properly ruled that defendant's requested cross-examination is barred by Rule 412 of the North Carolina Rules of Evidence. In pertinent part, that rule provides as follows:

> (b) Notwithstanding any other provision of law, the sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior:
>
> > (1) Was between the complainant and the defendant; or
> >
> > (2) Is evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant; or
> >
> > (3) Is evidence of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented; or
> >
> > (4) Is evidence of sexual behavior offered as the basis of expert psychological or psychiatric opinion that the complainant fantasized or invented the act or acts charged.

N.C.G.S. § 8C-1, Rule 412(b) (1986). Here, the victim's virginity or lack thereof does not fall within any of the four exceptions and is therefore an area prohibited from cross-examination by Rule 412. Moreover, as for defendant's claim that the rule violates his sixth amendment right to confront the witnesses against him, we re-

jected a similar claim in *State v. Fortney*, 301 N.C. 31, 269 S.E. 2d 110 (1980), and do so again today. Defendant's first assignment of error is without merit.

## II.

[2]  In his second assignment of error, defendant asserts that the trial court committed reversible error in denying his motion to suppress evidence seized without a warrant by law enforcement officers from his gym bag. The search in question, says defendant, was in violation of the fourth and fourteenth amendments to the United States Constitution and of article I, section 20, of the North Carolina Constitution. In addition, continues defendant, the improper admission of this illegally acquired evidence at trial was sufficiently prejudicial to warrant a new trial. We need not address the question of whether the search was valid. Assuming *arguendo* that the search violated defendant's constitutional rights and that the evidence therefrom was improperly admitted at trial, we find any such error in its admission harmless beyond a reasonable doubt.

On 14 November 1985, Agent Joel Morris of the State Bureau of Investigation, acting without a warrant, seized a gym bag belonging to defendant from the business office of Vira Farms, a Sampson County hog farm where defendant was employed. Agent Morris subsequently conducted a warrantless search of the bag. Inside, he found pig tranquilizer, needles, syringes, flex handcuffs, rope, and two .22-calibre bullets. At trial, defendant objected to the admission of any of the items of evidence seized from his gym bag by Agent Morris. The trial judge ruled that defendant lacked standing to challenge the search because the bag had been left in an area of the business office which is generally open to the public and because defendant's employer, Mr. Somboon Kachaenchai, in the presence of another of his employees, had opened the bag and viewed its contents. Defendant claims, first, that this evidentiary ruling by the trial court constitutes error and, second, that his cause was sufficiently prejudiced to warrant our order of a new trial. As stated above, we do not address the first claim. We disagree with the second.

Under current statutory and case law, error committed at trial which infringes upon defendant's constitutional rights is presumed to be prejudicial and entitles him to a new trial unless

the error in question is harmless beyond a reasonable doubt. *State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569, *cert. denied*, 459 U.S. 1080, 74 L.Ed. 2d 642 (1982); N.C.G.S. § 15A-1443(b) (1983). Significantly, this Court has held that the presence of overwhelming evidence of guilt may render error of constitutional dimension harmless beyond a reasonable doubt. *State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569. In the case at bar, the evidence of defendant's guilt, even without regard to *any* evidence or testimony concerning the gym bag or its contents, is indeed overwhelming.

First, defendant, who has several distinctive-looking moles on his face, was identified without hesitation as the perpetrator by the victim and by the hunters. The victim, who had more than ample opportunity to view defendant, positively identified him both as the man who had asked for pictures for "Autry" in the Eckerd's drug store and as the man who, while impersonating a law enforcement officer, had kidnapped and sexually assaulted her. Both hunters, who had shone a high intensity light on and into defendant's car upon coming on it in France Woods, were able to positively identify defendant as the man who was driving the car that night. One of the hunters testified to the presence of a second person in defendant's car that night.

Second, there was a great deal of incriminating evidence presented at trial concerning defendant's vehicle, a white AMC car with a burgundy interior. The victim, who spent a lengthy and horrible night primarily in defendant's car, testified that it was a white car with a burgundy interior. The hunters, who saw defendant's car clearly by virtue of their spotlight, also indicated that it was a white car with a burgundy interior. Defendant's car, in addition to being identified as the car used in the crime spree, was itself the source of other damning evidence. A search of the car by S.B.I. Agent Zawistowski yielded a .22-calibre bullet, a flex cuff, a needle, and a nylon cord—items of evidence completely consistent with the victim's account of the crime.

Third, various other items of evidence independent of the contents of the gym bag demonstrated overwhelmingly defendant's guilt of the crimes charged. Michael Smith, an acquaintance of defendant, testified that he had seen defendant with a pair of handcuffs and a blue light like those used by police officers. The same hunters who saw defendant deep in the woods on the night

in question also noticed a light on the dash of defendant's white car. Also, Mr. Melvin, one of defendant's co-employees at Vira Farms, testified that, on 14 November, defendant brought to the Vira Farms business office, along with the black gym bag, a brown sleeping bag. The victim testified that defendant had used a brown sleeping bag to cover her as he drove from the wooded area to the abandoned house. She testified further that it was this same brown sleeping bag on which defendant had forced her to lie at the abandoned house while he sexually assaulted her again. Clearly, even excluding any reference whatever to the gym bag in question or its contents, the evidence in the case at bar of this defendant's guilt is overwhelming.

Moreover, even if the trial court had declared the search in question illegal, the effect of such a ruling with respect to the jury's actual knowledge of the contents of the gym bag would have been negligible, if of any effect at all. Mr. Kachaenchai and Mr. Melvin, who opened and looked into defendant's bag before Agent Morris arrived, testified to the contents they in fact saw inside defendant's gym bag. Their testimony as to the presence of the highly incriminating items in the gym bag, irrespective of the trial court's decision as to the legality of the search by Agent Morris and his testimony with regard thereto, was to the same effect and makes even clearer that the evidence of defendant's guilt of these crimes is overwhelming. We hold that, assuming *arguendo* that the trial court erred in admitting the evidence in question, the error was harmless beyond a reasonable doubt. Accordingly, defendant's second assignment of error is without merit.

### III.

[3] In his third and final assignment of error, defendant asserts that the trial court committed reversible error in its instructions to defendant on the legal consequences of his decisions as to whether to testify and as to whether to offer other evidence in his own behalf. Specifically, defendant argues here that the trial court's explanation of defendant's right to testify misstated the legal consequences of his testimony and resulted in a chilling of his free exercise of that right. Though we agree with defendant that the trial court's instruction to defendant here constitutes er-

ror, we find that the error is harmless and does not warrant our order of a new trial.

During the course of defendant's trial, the trial court instructed defendant at considerable length concerning his decisions as to whether to testify and as to whether to present evidence in his own behalf at trial. The trial court instructed defendant that he had essentially three choices: (1) to neither present any evidence nor testify himself, (2) to present other witnesses and evidence but not testify himself, and (3) to present other witnesses and evidence and also testify himself. The trial court explained that defendant was within his rights to choose any of the three options, and it attempted to explain the particular legal consequences of each. Eventually, defendant presented no evidence and chose not to testify.

During one particular section of his instruction to defendant, the trial court attempted to explain the legal consequences of a decision by defendant to take the stand and testify in his own behalf. In pertinent part, the trial court stated as follows:

> [The prosecutor] could, on good faith, ask you about prior misconduct, whether it resulted in convictions in court if they had some good faith reason to ask those questions, and you would be under oath to answer the questions truthfully.

Defendant argues that this warning misstates the law in two respects: first, only those acts of misconduct probative of defendant's character for truthfulness or untruthfulness could be inquired into on cross-examination; and second, defendant would retain his right to assert his privilege against self-incrimination as to specific criminal misconduct that related only to his credibility. We agree and we hold that the trial court's instruction to defendant in this instance was error.

Rule 608(b) of the North Carolina Rules of Evidence provides as follows:

> (b) *Specific instances of conduct.*—Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on

cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of his privilege against self-incrimination when examined with respect to matters which relate only to credibility.

N.C.G.S. § 8C-1, Rule 608(b) (1986). The trial court, though it made an admirable and lengthy effort to explain to defendant his various options, clearly, as to one part, gave instructions inconsistent with Rule 608(b) and therefore committed error.

However, despite defendant's spirited argument to the contrary, we hold that, though the trial court did err in its instruction, the error is harmless. Assuming that, as defendant suggests, the trial court's error constitutes a violation of a constitutional right in defendant to take the stand in his own defense, the applicable standard for determining the presence or absence of prejudice is stated in N.C.G.S. § 15A-1443(b). This statute, which we also apply in part II of this opinion above, reads as follows:

(b) A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt. The burden is upon the State to demonstrate, beyond a reasonable doubt, that the error was harmless.

N.C.G.S. § 15A-1443(b) (1983). As we stated above, this statute dictates that trial court error which infringes a defendant's constitutional rights is presumed to be prejudicial and entitles him to a new trial unless the error is harmless beyond a reasonable doubt. *State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569.

As we stated in part II above, the evidence of defendant's guilt in the case at bar is simply overwhelming. Overwhelming evidence of defendant's guilt of the crimes charged may, and in this case does, render a constitutional error harmless. *State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569. We incorporate here both our initial review of the facts of the case at the outset of this opinion and, in addition, our specific reference to some of those

facts in part II above. The overwhelming evidence of defendant's guilt of the crimes charged clearly renders the trial court's error harmless beyond a reasonable doubt.

Also, though the trial court did misstate the law in its instruction to defendant concerning his decision as to whether to testify, the trial court repeatedly made very clear to defendant that he should consult his attorney before making any decision on the matter. On three separate occasions during the instructions to defendant, the court urged defendant to confer with his attorney before making any decision. Moreover, it is also clear from the record that defendant did in fact confer with his attorney on at least one occasion before informing the court through his attorney that he had chosen to present no evidence. We hold that, here, where the trial court's error in its instructions to defendant was insulated by defendant's access to and actual conference with his attorney, the trial court's instructional error is harmless beyond a reasonable doubt. Defendant's final assignment of error is therefore without merit.

In conclusion, having reviewed the record and each of defendant's three assignments of error, we find that defendant had a fair trial, free of prejudicial error. Accordingly, we leave undisturbed defendant's multiple convictions and accompanying sentences.

No error.