**STATE v. MOORE**

[131 N.C. App. 65 (1998)]

STATE OF NORTH CAROLINA, Plaintiff-Appellee v. ROBERTA JEAN MOORE, Defendant-Appellant

No. COA97-1329

(Filed 6 October 1998)

## 1. Evidence— refreshing recollection—review of interview summary

The trial court did not err in a prosecution for attempted murder, conspiracy, solicitation to commit murder, and assault by allowing a witness to use an interview summary prepared by police officers to refresh his recollection. Although defendant contended that the summary was inadmissible hearsay because the witness did not write or sign the document and the officers who prepared it did not testify, a statement used to refresh a witness's recollection is not required to be signed by the witness or even be the witness's own prior statement. Here, the State asked several questions to which the witness could not recall the answer, the court allowed him to review the document, the witness answered that it refreshed his memory, and he was thereby enabled to testify more accurately.

## 2. Evidence— interview summaries—use by defendant—objection waived

There was no prejudicial error in a prosecution for attempted murder, conspiracy, solicitation to commit murder, and assault in the use of interview summaries of the co-defendants prepared by officers who did not testify. Any objection was waived by defense counsel's use of the statements.

## 3. Criminal Law— court's characterization of evidence—no prejudicial error

There was no prejudicial error in a prosecution for attempted murder, conspiracy, solicitation to commit murder, and assault in the court's characterization of police interview summaries as statements and evidence in front of the jury. Both defendants referred to the documents as statements, introduced them into evidence, and sent them to the jury room without objection, and both defendants were allowed to explain what the documents were and the circumstances under which they were created. Moreover, there was overwhelming evidence of guilt.

STATE v. MOORE

[131 N.C. App. 65 (1998)]

Appeal by defendant from judgments entered by the Honorable William Z. Wood, Jr., on 30 April 1997 in Forsyth County Superior Court. Heard in the Court of Appeals 24 August 1998.

*Attorney General Michael F. Easley, by Associate Attorney General Julie Risher, for the State.*

*William L. Cofer for defendant appellant.*

HORTON, Judge.

The cases of Roberta Jean Moore (defendant Moore) and her co-defendant Donna Jean Duggins (defendant Duggins) were consolidated for trial at the 21 April 1997 Criminal Session of Forsyth County Superior Court; each was convicted by a jury of the offenses of attempted first degree murder, conspiracy to commit murder, solicitation to commit murder, and assault with a deadly weapon with intent to kill inflicting serious injury. Each defendant was sentenced in the presumptive range to terms of a minimum of 314 months and a maximum of 396 months, and each then appealed to this Court. Both appeals involve identical assignments of error and issues.

In May of 1996, defendant Moore and defendant Duggins, who are sisters, worked at a family business, Crescent Inks. Dean Harold Duggins (victim) also worked at the business and was married to defendant Duggins. On the evening of 30 May 1996, the Kernersville Police Department was called to the Duggins' home by defendant Duggins. The victim and a family car were missing and the police found blood on the bathroom door, blood, hair, human body tissue, and pieces of skull on the bed, and blood throughout the house. There were no signs of forced entry. The next morning, the police discovered the victim's car and the unconscious victim nearby in a rural area. He had been assaulted in his bed with a hammer, dragged from his bed and into the car, driven to a rural area and left to die. The victim suffered serious head injuries which resulted in some brain damage; he has no memory of the assault.

At trial, Edward Morgan (Morgan) testified that on 28 May 1996, defendant Moore told him that defendant Duggins would pay him $1,000.00 to kill the victim. Morgan agreed to kill the victim. Defendant Moore picked him up at the bus station and took him back to her apartment. On the evening of the next day, Morgan and defendant Moore drove around looking for a place where they could dispose of the body. Defendant Moore told Morgan that a person

STATE v. MOORE

[131 N.C. App. 65 (1998)]

named Jason was going to kill the victim that night, but that if Jason did not kill him, Morgan would do it and they would need a place to take the body. They located a suitable place on a dirt road and discussed the details of the murder, including the use of a hammer to kill the victim.

According to Morgan, when he awoke the next morning, Moore had gone to work and had left a hammer by the bed. That evening defendant Duggins called defendant Moore and Morgan to tell them that the victim was asleep, and they went to the Duggins' home. Defendant Moore let Morgan out of her car near the Duggins' home, and defendant Duggins let Morgan into the home and told him where the victim was sleeping. Morgan repeatedly hit the victim in the head until he thought the victim was dead. Morgan and defendant Duggins then dragged the body of the victim out of the house and Morgan placed the body in the victim's car and drove it to the predetermined dirt road location where he dumped the victim and abandoned the car.

Casey Kirkman (Kirkman) testified that on 28 May 1996, he accompanied defendant Moore's daughter, Rebecca, to the bus station in Winston-Salem to buy a ticket for Morgan to travel from Spartanburg, South Carolina, to Winston-Salem. Kirkman also testified that defendant Moore told him that she and defendant Duggins had asked Morgan to "get" the victim.

Charles Hance (Hance) testified that he took Morgan, defendant Moore, and defendant Moore's children Rebecca and Allen, to South Carolina on 31 May 1996, and left Morgan there. Hance further testified that Rebecca told him that the defendants had planned the beating of the victim.

Police officers conducted separate interviews with several different people following the incident, including both defendants and David Helton (Helton). These interviews were not recorded but typed summaries were later prepared. During the trial the State was allowed to use the typed summaries, over the objections of defendants, on cross-examination of both defendants and Helton. The State did not, however, introduce the statements from the summaries as part of its case in chief. The police officers who had conducted the interviews with defendants and Helton did not testify at trial. Furthermore, the State did not contend that the police summaries were verbatim records of interviews with defendant Moore, defendant Duggins, or Helton.

STATE v. MOORE

[131 N.C. App. 65 (1998)]

At trial, Helton was called as a witness for defendant Duggins. After testifying about events on the evening and night of the attack on the victim, Helton was cross-examined by the State about several things he allegedly told the police after the incident occurred. At trial, Helton did not remember telling the police the particular facts which were attributed to him. The State then showed him a page from the summary of his interview with the police and asked him to read it. The defense objected. At the bench conference, the State referred to the document as "the statement [Helton] gave to the police," and stated that it was being used to refresh Helton's recollection. The trial court allowed Helton to read the entire page, and he acknowledged that the document refreshed his recollection.

Defendant Duggins testified as a witness on her own behalf. On direct examination, defendant Duggins stated that she loved her husband, the victim, and had nothing to do with the assault on him. On cross-examination by counsel for defendant Moore, defendant Duggins testified that she had reviewed the "statement," or the "report" of her interview with the police on 31 May 1996. The document was marked as defense exhibit "M4." The State's objection to its admission at that point was sustained. Counsel for defendant Moore referred to the interview between the police and defendant Duggins as a "statement" and continued to examine her about what she had told the police, particularly any omissions she had made in the interview with the police.

During defendant Duggins' cross-examination by the State, she was asked to "briefly look at [her] statement" to see if there was any reference in it as to whether she had been to a particular place on the day of the assault. There was no objection to the question or to the request that defendant Duggins read the document. Defendant Duggins was later asked by the State whether she told the police that defendant Moore "lies all the time." Defendant Duggins denied making the statement, stating that she did say her sister "tell[s] stories sometimes." The State then sought to show defendant Duggins the document which summarized the interview, and her counsel objected. The trial court excused the jury, discussed the matter with counsel, and ruled that the State could have her review the document to refresh her recollection. When the jury returned to the courtroom, the following occurred:

By Mr. Eric Saunders [Assistant District Attorney]:

Q. Ms. Duggins, let my [sic] hand you this piece of paper and ask you to look at it and tell me whether or not that refreshes your recollection about the interview that you had with the police on June the 7th.

(Pause in the proceedings.)

Q. Does that refresh your recollection, ma'am?

A. Some of the stuff in it is not true.

Q. And which part—which part in here would not be true, ma'am?

A. A couple—

Q. Tell the members of the jury which part of that statement you gave on June the 7th wasn't true.

MR. CLELAND: Well, objection, Your Honor.

MR. COFER: Objection.

THE COURT: Overruled.

Defendant Duggins then pointed out that, among other things, the document was inaccurate as to why she did not want guns in the house and that she did not tell the police defendant Moore lied "all the time," but instead had said that defendant Moore lied "sometimes." She stated that she had never signed any "statement" of what she said to the police, nor did she ever write down a "statement."

On recross-examination by the State, the following exchange occurred:

Q. Okay. I'm just asking you to read the statement, ma'am, and tell the members of the jury what is in that statement that is not true.

MR. CLELAND: Object to the characterization again of that document as a statement. It's a police officer's or some police officer's notes. It is not a statement.

MR. SAUNDERS: Judge, Mr. Cofer marked it and wanted her to look at it for some reason or another.

THE COURT: Okay. It's overruled. Go ahead.

(Pause in the proceedings.)

STATE v. MOORE

[131 N.C. App. 65 (1998)]

A. Yes.

Q. So except for those things that you mentioned, everything else in that statement is true?

A. Yes, sir.

Defendant Moore also testified in her own behalf. Her counsel questioned her extensively about her purported "statement," which was marked "M2." Defendant Moore confirmed that the summary of her interview with the police was "basically true." On cross-examination, the State again asked her about the "statement," and she again confirmed that nothing she said was misrepresented in the summary of her interview. There was no objection to either the question or answer. Thereafter, the State cross-examined her about the contents of the document. Except for one objection by defendant Duggins' counsel, which was overruled, there were no objections to a long series of questions based on the contents of the interview summary. On redirect examination, defendant Moore's counsel examined her in some detail about the contents of the interview summary. At the close of her evidence, defendant Moore introduced her interview summary "M2" into evidence.

After the jury retired to deliberate, the trial court allowed counsel for defendant Moore to reopen the evidence to introduce into evidence defendant Duggins' 31 May 1996 interview summary "M4." No objection was made by either the State or by defendant Duggins. The written summaries of the interviews with both defendant Duggins and defendant Moore (Exhibits "M2" and "M4") were then sent to the jury room without objection by counsel for the State or either defendant.

The issues are whether (I) the trial court erred in allowing the summaries to be used because they were inadmissible hearsay which violated the defendants' constitutional rights to confront and cross-examine those who prepared the summaries, and (II) the trial court committed reversible error by allowing the State to designate statements from the summaries as the defense witnesses' "prior statements" and as "evidence."

I

[1] Defendant Moore first argues that the typewritten summaries were inadmissible hearsay because the police officers who prepared the documents did not testify nor did defendants or Helton write or sign the summaries. We disagree.

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (1992). A statement which is offered for any purpose other than to prove the truth of the matter asserted is admissible even if it was not made by the declarant while testifying at trial. *Hall v. Coplon*, 85 N.C. App. 505, 510, 355 S.E.2d 195, 198 (1987).

A statement used to refresh a witness's recollection is not required to be signed by the witness or even be the witness's own prior statement. *State v. Demery*, 113 N.C. App. 58, 67, 437 S.E.2d 704, 710 (1993). "If upon looking at *any* document [the witness] can so far refresh his memory as to recollect a circumstance, it is sufficient; and it makes no difference that the memorandum is not written by himself, *for it is not the memorandum that is the evidence but the recollection of the witness.*" *Id.* (quoting *State v. Smith*, 291 N.C. 505, 517, 231 S.E.2d 663, 671 (1977)). Prior statements may be used to impeach a witness where there is proof that on another occasion the witness has made statements inconsistent with his or her trial testimony. *Id.*

In this case, the State asked Helton several questions to which he could not recall the answer. Therefore, the trial court allowed him to review the document in question, and Helton answered that it did refresh his memory. He was thereby enabled to testify more accurately about the contested facts. This is a proper use of a writing to refresh a witness's recollection.

[2] The trial court also did not err in allowing the summary to be used to impeach the testimony of defendant Duggins. N.C. Gen. Stat. § 15A-1443(c) (1997) states that "[a] defendant is not prejudiced by . . . error resulting from his own conduct." *See also State v. Jennings*, 333 N.C. 579, 604, 430 S.E.2d 188, 200 (defendant cannot claim reversible error occurred when he introduces the evidence which he claims is prejudicial or makes no objection when the evidence is brought in), *cert. denied*, 510 U.S. 1028, 126 L. Ed. 2d 602 (1993).

In this case, any objection to the use of the interview summary to refresh the recollection of or impeach the testimony of defendant Duggins was waived. Counsel for defendant Moore opened the door to the testimony when he asked defendant Duggins on cross-examination if she had an opportunity to read the "statement" she made on the early morning of 31 May 1996, or "the report that was made of

[her] statement." Defendant Moore's counsel referred to the document as a "statement" initially and continued to do so without any motion to strike or objection by defendant Duggins. The document was marked as defense exhibit "M4" by defendant Moore and eventually submitted to the jury. Furthermore, defendant Duggins' counsel examined her about the circumstances of her interview on 31 May 1996, asking her whether she wrote or signed any "statement" and how many police officers were asking her questions during the interview.

As to the use of the summary of defendant Moore's own interview with the police, any error which may have occurred was also waived because of defendant Moore's use of the statements herself. Her own counsel introduced the summary, showed her the summary during trial, and asked whether it was accurate; and she acknowledged that it was. Moreover, there were no objections to a long line of cross-examination about the summary. As a result, any errors in admission are not prejudicial.

II

[3] Defendant Moore also contends that it was reversible error for the trial court to characterize the documents as "statements," and "evidence" in front of the jury. We disagree. Although this may have been improper, any error committed was not prejudicial because both defendants referred to the documents as "statements" on occasion and introduced them into evidence and sent them to the jury room without objection. *See Jennings*, 333 N.C. at 604, 430 S.E.2d at 200. In addition, the jury could not have been misled about the nature of the documents, as both defendant Moore and defendant Duggins were allowed to explain what the documents were and under what circumstances they were created. Defendant Moore has shown no prejudicial error in the State's use of the summaries of the interviews with her, defendant Duggins, or Helton.

Finally we note that, even if it were error to allow in the summaries, there was overwhelming evidence of the guilt of defendant Moore; and any error which resulted was harmless beyond a reasonable doubt. *See State v. Autry*, 321 N.C. 392, 401, 364 S.E.2d 341, 347 (1988).

No error.

Chief Judge EAGLES and Judge MARTIN, Mark D., concur.