Justice HUDSON
concurring in the result.
Though the majority here reaches the correct result, it does so by relying on State v. Ortiz-Zape,_N.C._,_S.E.2d_(2013) (329PA11), and by utilizing an approach which in my view is unnecessarily broad and confusing. I conclude that in this slice of cases— in which certified lab reports prepared for this prosecution are entered into evidence through a surrogate witness who was not involved in the testing — the approach can be quite simple. As such, I write separately to set out that approach as dictated by the United States Supreme Court in Melendez-Diaz and Bullcoming. Therefore, I respectfully concur in the result.
*59 Because I have summarized the development of the Supreme Court’s recent Sixth Amendment Confrontation Clause jurisprudence in the dissenting opinion in Ortiz-Zape, I will not do so again here. See Ortiz-Zape,_N.C. at_,_S.E.2d at_(Hudson, J., dissenting). But because the majority’s opinion does not offer the necessary discussion of the confrontation issues in this case but instead turns on whether the testimony fits under the umbrella of “independent opinion” the majority has constructed in Ortiz-Zape, I cannot agree with its reasoning here. I will endeavor to fill in the missing pieces of the analysis and offer a methodical approach that is simple to apply to future cases within this easily definable category.
Though the majority does not clearly explain this, two separate Confrontation Clause violations arise here: first, the admission of the lab reports without accompanying testimony by the analyst who prepared them; and second, admission of Agent Schell’s testimony based entirely on her review of the lab reports. While the two are closely connected in this case, they require separate analyses for future cases that may involve one or the other.
First, we examine the admission of the lab reports themselves for constitutional error. “As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness.” Bullcoming v. New Mexico,_U.S._,_, 131 S. Ct. 2705, 2713 (2011). There is no question that the lab reports are out-of-court statements and that the witnesses (Tom Shoopman and Irvin Allcox) who made those statements did not testify. In addition, the State made no showing that those witnesses were unavailable or that defendant had a prior opportunity to cross-examine them. The only question remaining from the Bullcoming rule quoted above, then, is whether the lab reports are “testimonial in nature.” Id. at_, 131 S. Ct. at 2713. Applying the analysis from Melendez-Diaz and Bullcoming, I conclude that the reports are undoubtedly testimonial and were prepared solely for the prosecution of this defendant.[1] As such, the test *60 ing analysts are witnesses against defendant whom he is entitled to confront under the Sixth Amendment.
In Melendez-Diaz v. Massachusetts the Supreme Court opined that “certificates” of lab analysts were affidavits and therefore, testimonial. 557 U.S. 305, 310, 129 S. Ct. 2527, 2532 (2009). Further, the Court found that the certificates were “incontrovertibly a solemn declaration or affirmation made for the purpose of establishing or proving some fact.” Id. (citations and internal quotation marks omitted). In Bullcoming the Supreme Court refused to distinguish between the “sworn” certificates in Melendez-Diaz and the “unsworn” lab reports in that case. Instead, the Court noted that “[i]n all material respects, the laboratory report in this case resembles those in Melendez-Diaz. ” Bullcoming,_U.S. at_, 131 S. Ct. at 2717. The Court went on to conclude that the lab reports were testimonial, stating that “[a] document created solely for an ‘evidentiary purpose,’ . . . made in aid of a police investigation, ranks as testimonial.” Id. at_,, 131 S. Ct. at 2717 (citing Melendez-Diaz, 557 U.S. at 310-11, 129 S. Ct. at 2532). The same analysis applies here: the lab reports were created solely for the evidentiary purpose of establishing or proving that the substances in question were in fact cocaine in the State’s case against this defendant. The forms at issue state near the bottom, in all capitals, that “THIS REPORT IS TO BE USED ONLY IN CONNECTION WITH AN OFFICIAL CRIMINAL INVESTIGATION.” Directly under that statement is the printed attestation that: “This report represents a true and accurate result of my analysis on the item(s) described,” followed by a signature. State’s Exhibit 29, the analysis of State’s Exhibit 10 (from the 3 March 2008 buy) is signed by “T.E. Shoopman”; State’s Exhibit 30, the analysis of State’s Exhibit 12 (from the 6 March 2008 buy) is signed by “Irvin Lee Allcox.”
There can be no question that these lab reports are testimonial in nature. Because both reports were offered and received into evidence through Agent Schell’s testimony without any limitation on purpose, over defendant’s objection based on the Confrontation Clause, their admission into evidence without testimony from the testing analysts was a clear violation of the Confrontation Clause under Bullcoming.[2], This error allowed admission of the essential evidence of a central *61 element of the charge of sale or delivery of cocaine, namely, that the substance was cocaine. As such, the error cannot be considered harmless beyond a reasonable doubt unless there was other, independent evidence to establish the same crucial fact.
Second, then, we must examine Agent Schell’s testimony regarding her review of the lab reports. The decision in Bullcoming leaves room for an expert who did not conduct the testing in question to offer an “independent opinion” on the fact at issue. See_U.S. at _, 131 S. Ct. at 2716 (noting that the State did not “assert that [the substitute expert] had any ‘independent opinion’ concerning Bullcoming’s [blood alcohol content]”). Justice Sotomayor emphasized that very point in her concurrence. Id. at_, 131 S. Ct. 2722 (Sotomayor, J., concurring) (stating that “this is not a case in which an expert witness was asked for his independent opinion about underlying testimonial reports that were not themselves admitted into evidence”). Despite the erroneous admission of the lab reports here, the State’s case could perhaps have been salvaged if Agent Schell had presented such an independent expert opinion regarding the identity of the chemical substance. She did not.
When considering whether admission of an expert witness’s opinion based on underlying lab reports is constitutionally permissible, I apply a methodical approach. This analysis is discussed at length in the dissenting opinion in Ortiz-Zape,__ N.C. at_,_S.E.2d at __(Hudson, J., dissenting), so I will abbreviate it here. First, we consider whether the underlying lab reports are testimonial — if they are not, there is no Confrontation Clause violation. Second, we examine the identity of the witness testifying based on the reports — if the original testing analyst does not appear as a witness, and the State does not show that she was unavailable and that defendant had a prior opportunity to cross-examine her, neither the report itself nor the report’s conclusions can be admitted as evidence.
Third, we consider whether the testifying analyst has offered an independent opinion based on something other than her review of the reports. When the State offers an expert witness ostensibly testifying to an independent opinion based on review of inadmissible testimonial lab reports, we must carefully examine the testimony of the expert to determine whether she offers a truly independent expert opinion or merely acts as the surrogate analyst forbidden by Bullcoming.
The majority held in Ortiz-Zape that “admission of an expert’s independent opinion based on otherwise inadmissible facts or data *62 ‘of a type reasonably relied upon by experts in the particular field’ does not violate the Confrontation Clause so long as the defendant has the opportunity to cross-examine the expert.” Ortiz-Zape, _ N.C. at_, _S.E.2d at_(majority opinion) (quoting N.C.G.S. § 8C-1, Rule 703 (2011)). The majority then “emphasize[d] that the expert must present an independent opinion obtained through his or her own analysis and not merely ‘surrogate testimony’ parroting otherwise inadmissible statements.” Id. at_,_S.E.2d_(citation omitted). The rule from Ortiz-Zape is incomplete at best, because it takes no account of the purpose for which the report was prepared and whether it is offered for its truth. See Williams v. Illinois,_ U.S._,_,_, 132 S. Ct. 2221, 2235, 2243 (2012) (plurality). And even if the statements from Ortiz-Zape appear reasonable, in reality the majority has created a rule under which the State can circumvent the Confrontation Clause simply by asking the testifying analyst the question: “What is your independent expert opinion?” See Ortiz-Zape, _N.C. at_,_S.E.2d at_(finding no confrontation problem when expert witness reported no independent analysis or knowledge beyond that presented in the inadmissible report, but was asked: “What is your independent expert opinion?”); State v. Brewington, _. N.C._,_,_S.E.2d_,_(2013) (235PA10) (finding no confrontation problem when expert witness testified that “[b]ased upon all the data that [Agent Gregory] obtained from the analysis of that particular item ... I would have come to the same conclusion that she did”). The majority’s rule, as applied in Ortiz-Zape and Brewington, does not actually require any independent analysis or work on the expert’s part. The expert may simply review the nontestifying analyst’s report and adopt its conclusions as her own. That rule is flatly inconsistent with United States Supreme Court precedent on this issue. I would instead insist that the expert have actually done independent analysis — either by doing his or her own analysis of raw data obtained by the nontestifying analyst or (preferably) retesting the substance and reporting his or her own results. Otherwise, the Sixth Amendment gives defendant the right to confront the testing analyst by cross-examination.
The final step in the analysis is to determine whether any preserved constitutional error is harmless beyond a reasonable doubt. The State bears the burden of making this showing, which generally requires that “overwhelming” evidence of guilt remain after removal of the constitutionally problematic evidence. See State v. Autry, 321 N.C. 392, 400, 364 S.E.2d 341, 346 (1988).
*63 I now apply that analytical framework here. As discussed above, there is no question that the lab reports were created solely to be used as evidence in this prosecution and are therefore testimonial. Further, the original testifying analysts did not testify and the State made no effort to show that they were unavailable or subject to prior cross-examination. Because Agent Schell testified based on Agent Shoopman’s and Agent Allcox’s analyses and reports, we examine whether she has offered a truly independent opinion or has merely agreed with the nontestifying analysts’ conclusions, which are testimonial opinions on a key element of the case against defendant. The latter violates the Confrontation Clause. See Bullcoming,_U.S. at _, 131 S. Ct. at 2716.
The testimony quoted by the majority speaks for itself: Agent Schell testified specifically to the conclusions of two nontestifying analysts and offered no independent analysis or opinion at all. The only opinion she was asked to give was: “Do you agree with the conclusion stated in that report?” There is nothing independent about agreeing with a conclusion in an inadmissible report. This testimony is functionally indistinguishable from the testimony prohibited in Bullcoming, in that it deprives defendant of any meaningful cross-examination regarding either agent’s testing procedures. Because Agent Schell did not observe the testing by Agent Shoopman or Agent Allcox, like the surrogate analyst in Bullcoming, she could not be cross-examined about “what [either analyst] knew or observed about the events [their reports] concerned, i.e., the particular test and testing process [they] employed.” Id. at_, 131 S. Ct. at 2715. “Nor could such surrogate testimony expose any lapses or lies on [either Agent Shoopman’s or Agent Allcox’s] part.” Id. at_, 131 S. Ct. at 2715. Agent Schell’s status as an expert witness does not allow the State to bypass the Confrontation Clause by simply asking her to read the conclusions of nontestifying witnesses into evidence. Nor has she provided any independent expert opinion — developed through her own analysis- — for which the lab reports were a basis. Agent Schell’s testimony regarding the nontestifying analysts’ conclusions about the substances involved in the 3 March and 6 March 2008 transactions violates defendant’s Confrontation Clause rights.
Having determined that the lab reports are testimonial; that Agent Schell did not personally conduct or participate in the testing on the 3 March and 6 March 2008 samples, and the State did not show that the testing analysts were unavailable and that defendant had a prior opportunity to cross-examine; and that Agent Schell offered no inde *64 pendent opinion based on the lab reports, I agree with the majority’s ultimate holding that Agent Schell’s testimony violates the Confrontation Clause and admission of her opinions was prejudicial error as to the sale or delivery conviction. I therefore concur in the result.
Chief Justice PARKER joins in this concurring opinion.

. Although Williams v. Illinois does not control here because it involved a report not prepared for that particular prosecution, the four-member plurality’s opinion noted what distinguished that case from Bullcoming and Melendez-Diaz-. “In those cases, the forensic reports were introduced into evidence, and there is no question that this was done for the purpose of proving the truth of what they asserted: in Bullcoming that the defendant’s blood alcohol level exceeded the legal limit and in Melendez-Diaz that the substance in question contained cocaine. Nothing-comparable happened here.” Williams v. Illinois,_U.S._,_, 132 S. Ct. 2221, 2240 (2012) (plurality).

. State law provides that the State may properly introduce the report without the testimony of the original testing analyst if the State gives written notice to the defendant that it intends to do so and the defendant does not object in a timely fashion. N.C.G.S. § 90-95(g) (2012). The Supreme Court has endorsed such statutory waiver of confrontation rights in this context. See Melendez-Diaz, 557 U.S. at 326-27, 129 S. Ct. at 2540-41. The State did not make use of subsection 90-95(g) here.