STATE OF NORTH CAROLINA v. WILLIAM LEE ROOPE

STATE OF NORTH CAROLINA v. WILLIAM DAVID COOKE

STATE OF NORTH CAROLINA v. JAMES LAWRENCE OVERTON, JR.

No. 97-1087

(Filed 4 August 1998)

**1. Appeal and Error— double jeopardy claim—not raised at trial—waived**

Defendants in a prosecution for burglary, assault, and larceny waived a contention that judgments for robbery with a dangerous weapon and felonious larceny violated the double jeopardy clause by failing to raise it at trial.

**2. Aiding and Abetting— burglary and armed robbery— intent—evidence sufficient**

The evidence supported convictions of defendants for armed robbery and first-degree burglary on acting in concert and/or aiding and abetting theories where the testimony of a coconspirator revealed a common purpose to rob and kill all of the victims, all five of the coconspirators went to the victims' house, and testimony revealed that the two defendants who brought this appeal stabbed and robbed the victims or were present. The evidence reveals the requisite mens rea for first-degree burglary and armed robbery.

**3. Criminal Law— joinder—no abuse of discretion**

The trial court did not abuse its discretion in a prosecution for burglary, robbery, assault, and larceny by joining the trials of

STATE v. ROOPE

[130 N.C. App. 356 (1998)]

codefendants where, assuming that the evidence presented resulted in conflict in defendants' respective positions, there was substantial evidence of the appealing defendant's guilt. This substantial evidence overrides any possible harm resulting from a joint trial.

**4. Evidence— statement of nontestifying codefendant—no prejudice**

The Sixth Amendment rights of a defendant in a burglary, robbery, assault, and larceny prosecution were violated by the use of a nontestifying defendant's out-of-court confession which was improperly redacted by merely replacing this defendant's name with the word "blank," but there was overwhelming evidence of this defendant's guilt from other sources and the error was harmless beyond a reasonable doubt.

Appeal by defendants from judgments dated 11 November 1996 by Judge Herbert O. Phillips, III, in Halifax County Superior Court. Heard in the Court of Appeals 20 May 1998.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Ellen B. Scouten, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Constance H. Everhart, for defendant appellant William Lee Roope.*

*Smallwood and Hayes, P.C., by Teresa L. Smallwood, for defendant appellant William David Cooke.*

*Ronnie C. Reaves, P.A., by Lynn Pierce, for defendant appellant James Lawrence Overton, Jr.*

GREENE, Judge.

Defendant William Lee Roope (Roope) appeals his convictions for first-degree burglary, robbery with a dangerous weapon, assault with a deadly weapon with intent to kill inflicting serious injury, larceny of a firearm, and felonious larceny. Defendants William David Cooke (Cooke) and James Lawrence Overton, Jr. (Overton) appeal their convictions for first-degree burglary, robbery with a dangerous weapon, assault with a deadly weapon inflicting serious injury, larceny of a firearm, and felonious larceny.

The evidence revealed that N.L. Braswell, Jr. (Mr. Braswell), his wife Dorothy Elaine Braswell (Mrs. Braswell), and their adult son Robert L. Braswell (Robert Braswell) sustained life-threatening stab wounds during a break-in of their home on 12 November 1995.

Stephanie Raye Childers (Childers) testified that she and Cooke decided "to steal [Cooke's parents'] car [on 12 November 1995] and we were going to leave town, just trying to buy time to spend together before the police caught up with me [for a probation violation]." That afternoon, Childers, Roope, Overton, James Smith [Smith], and two other boys went to an abandoned house. While there, Childers told Roope that she and Cooke were planning to steal his parents' car and money and leave town that night. Roope told her that "the police were looking for him . . . and [for] . . . Overton and . . . Smith, and they wanted to get out of town, too, so when I told him that [Cooke] and I had planned to leave town, he said that they were going to go as well." After Cooke arrived at the abandoned house, Childers, Cooke, and Roope discussed "various places that we could get money, get a car." They considered stealing Cooke's parents' car, Childers' next-door neighbors' car, or Childers' parents' car. Childers testified that Roope told them that they "should just go in [Childers' parents'] house and just take the money and car keys, whatever we wanted, and he would kill my parents." Childers further testified that after leaving the abandoned house, she, Cooke, Roope, Overton, and Smith were walking and she "told them that I thought it would be better if we went to my grandparents' [(Mr. and Mrs. Braswell)] house instead of mine." Childers, Roope, Cooke, Overton, and Smith then walked to Childers' grandparents' house. Once they arrived at her grandparents' house, Childers, Roope, Cooke, Overton, and Smith "huddled together in a circle . . . a few inches apart at the most" and discussed what they were going to do. Childers told the others the layout of her grandparents' house, and that her uncle, Robert Braswell, also lived there. All five then went quietly into the unlocked house. Once inside the house, the group decided that "[Roope] and . . . Smith would go into the room with my grandparents. [Roope] said [Cooke] was going to, too. . . . Overton was suppose to go into the back bedroom with my uncle and that I was suppose to go back there with him. And then I was to get the money." Childers testified that it was her understanding that the five of them would rob and kill her grandparents and her uncle. Roope then stated that "he, . . . Smith, and . . . Cooke were going to kill my grandparents." Childers and Overton went down the hallway to her uncle Robert Braswell's bedroom. "The door

opened and [Robert Braswell] came out and he didn't make it all the way out the door and [Overton] attacked him . . . [with a] knife." During Overton's struggle with Childers' uncle, Childers stabbed her uncle in the leg.

> I backed out of the room and . . . went [back] down the hall . . . and at that time . . . Roope and . . . Overton had gone into the family room where my grandparents were, and I went to the doorway and I looked in and [Roope] was standing beside my grandfather and James was standing behind my grandmother and she was beside her chair bent over and there was blood all over her chair. . . . She was bleeding, I couldn't tell exactly from where . . . .

Childers then went to her grandparents' bedroom, and then "Overton came in there and he grabbed me by my shoulders and he said . . . , 'I can't kill him.' And he said something about he saw his brother die and he said he couldn't kill [Robert Braswell], and I told him it was okay, he didn't have to." Childers then went through the drawers in her grandparents' bedroom and took a wallet containing a few hundred dollars and some rings out of her grandmother's jewelry box. Childers, Roope, Overton, Cooke, and Smith then left her grandparents' house in her uncle's truck.

Robert Braswell testified that he woke up after going to bed on the night of 12 November 1995 and saw Overton, who he was able to identify in court, holding a knife. Overton proceeded to stab Robert Braswell several times. Robert Braswell stated that he next remembers lying on his bed and "gasping for breath." He "heard a voice behind me say, 'Finish him' and another voice said, 'I can't do him again with him lying there already hurting like that.' " Then Robert Braswell testified:

> [T]he first voice said it again after that, says, "You remember when we were out front, we decided no witnesses" and that's when I looked back and . . . Overton and . . . Roope were standing there. And then . . . Overton said again, "I can't do him again." And that's when Roope said, "Cover him" and Roope walked around to the other side of the bed and Overton tried to cover my head with a blanket, but like I said, I couldn't—I mean with a pillow, and I couldn't breathe anyway, so, I was struggling, and the next thing I know I'm standing up in the middle of the floor between the two of 'em.

Robert Braswell testified that the voice that said "remember . . . we decided no witnesses" belonged to Roope, and he identified Roope in court. Robert Braswell stated that Roope then asked him if he had any guns in the house, and he told Roope and Overton that he had a gun in the closet. Overton got the gun. Roope then "asked me like, 'If you have anymore money,' he said, 'don't lie to me, if you have, cause if I find it, I'm gone kill you.' And I told him there was some money in a envelope on the top shelf of the shelving unit in a birthday card." Roope then "turned around and stuck me—stabbed me in my navel." Robert Braswell heard Roope getting the money as he fell back on the bed, and then Roope walked over and asked where the keys to the truck were. Robert Braswell testified that "this is when I saw . . . Cooke, like over my shoulder, all I saw was his head and face, and Roope picked the keys up and walked [out of the room]." Robert Braswell identified Cooke in court.

Mrs. Braswell testified that she and her husband (Mr. Braswell) were watching television when someone behind her started "cutting on my throat." Mrs. Braswell could not see her attacker, but heard him state: "I'm sorry, ma'am, but I have to do this." Mrs. Braswell looked over at her husband, and saw Roope "stabbing him over and over and over." Mrs. Braswell identified Roope in court. Mrs. Braswell also "got a glimpse" of a girl in her kitchen, who she later learned was her granddaughter, Childers. After Roope left the room where Mrs. Braswell and her husband lay, she attempted to move; Roope came back into the room and "stabbed me in my leg and crippled me for life probably and a place on my back right back there . . . ."

Mr. Braswell testified that while he and his wife were watching television on 12 November 1995, "Roope . . . got me right in the stomach with a knife, said, 'I got you old man.' " Mr. Braswell testified that Roope continued to stab him repeatedly. After stabbing Mr. Braswell, Roope said "I'm Scarecrow," and then left the room. Mr. Braswell saw Smith stabbing his wife, and then saw Roope return to the room and stab his wife as well. Mr. Braswell identified Roope in court.

Sergeant Bruce Temple (Sergeant Temple) of the Roanoke Rapids Police Department testified that when he arrived at the Braswell residence following the stabbings, he asked Mrs. Braswell "if she knew who did this to her and her response was 'no.' " Sergeant Temple then asked Mrs. Braswell "if she saw the person who did this to her, she

said that there were more than one and she didn't know exactly who cut her." Mrs. Braswell also told Sergeant Temple that "she did see a boy and she gave me the description of black hair, wearing a long trench coat. She said that she thought that the kids called him 'Scarecrow.' " Sergeant Temple further testified that he knew an individual nicknamed "Scarecrow" whose name was "Willie Roope," that he had spoken with Roope earlier on the day of the stabbings about an unrelated matter, and that Roope was wearing a long black trench coat and jeans at that time. It was later discovered by the police that Roope has the word "Scarecrow" tattooed on his left shoulder.

On 13 November 1995, Detective William Davis (Detective Davis) of the Louisiana State Police noticed a Toyota truck with North Carolina license plates driving erratically. Detective Davis stopped the truck and apprehended the occupants. Detective Davis identified Roope in court as the driver, and identified the other occupants of the truck as Childers, Smith, Overton, and Cooke.

On 13 November 1995, Overton made a statement to the police which was read into evidence at trial. The names of both Roope and Cooke were deleted from Overton's confession prior to its admission into evidence. The trial court instructed the jury that Overton's confession was "being offered by the State as against . . . Overton only. It is not evidence to be considered with respect to the State's case as to . . . Roope or . . . Cooke and you may not consider it as against them." Overton's confession, as redacted and read to the jury, stated in pertinent part:

[Question]: Now, you mentioned you and your friends went, who was with you when y'all went to this house yesterday evening?

[Answer]: A friend of mine, "blank."

. . . .

[Question]: . . . Who else?

[Answer]: Another friend of mine "blank."

. . . .

. . . I think James and "blank" went in there and stabbed them and cut them up. It looked like somebody just went in there with a knife and just started hacking at a piece of meat . . . . "Blank" cut the phone [cords] . . . so they wouldn't work . . . . And I

think "blank" came up with a total of six hundred dollars and the young lady, she, came up with I think close to a thousand dollars cash . . . .

Overton stated that "the crime was suppose to be committed by killing all three beings in the house," and his statement substantially corroborated Childers' trial testimony. The trial court instructed the jury that they could not consider Overton's out-of-court statement against Roope or Cooke. Neither Overton, Roope, nor Cooke testified at trial.

All three defendants moved the trial court to dismiss the charges against them for insufficiency of the evidence, and all three motions were denied. Overton and Cooke unsuccessfully contended before the trial court that there was insufficient evidence that they had the requisite *mens rea* for the charges against them on acting in concert and/or aiding and abetting theories of guilt. The trial court granted the State's motion for joinder over the objections of Roope and Overton.

The issues are whether: (I) the failure to raise a double jeopardy argument in the trial court waives any alleged error; (II) substantial evidence was presented that Cooke and Overton had the requisite *mens rea* for the jury to find them guilty of first-degree burglary and armed robbery on acting in concert and/or aiding and abetting theories of guilt; (III) the trial court abused its discretion by granting the State's motion for joinder; and (IV) the admission of a non-testifying defendant's out-of-court confession, redacted so as to delete the names of jointly tried codefendants, was prejudicial error.

I

[1] Defendants Roope, Cooke, and Overton first contend that the entry of judgments against them for both robbery with a dangerous weapon and felonious larceny violates the Double Jeopardy Clause of our state and federal constitutions. Defendants have waived this claim, however, by failing to raise it at trial; accordingly we do not address it here. *See, e.g., State v. Madric*, 328 N.C. 223, 231, 400 S.E.2d 31, 36 (1991) (refusing to address double jeopardy issue where defendant failed to raise it at trial); *State v. Thompson*, 314 N.C. 618, 621, 336 S.E.2d 78, 79-80 (1985) ("[T]he failure of a defendant to properly raise the issue of double jeopardy before the trial court precludes reliance on the defense on appeal."); *State v. McKenzie*, 292 N.C. 170, 176, 232 S.E.2d 424, 428 (1977) ("[D]ouble jeopardy protec-

**STATE v. ROOPE**

[130 N.C. App. 356 (1998)]

tion may not be raised on appeal unless the defense and the facts underlying it are brought first to the attention of the trial court.").

II

**[2]** Defendants Cooke and Overton contend that the evidence of their specific intent to commit first-degree burglary and armed robbery was insufficient to support their convictions for these offenses on either acting in concert or aiding and abetting theories.[1] We disagree.

The law applicable to this case provides:

[W]here multiple crimes are [committed], when two or more persons act together in pursuit of a common plan, all are guilty only of those crimes included within the common plan committed by any one of the perpetrators. . . . [O]ne may not be criminally responsible under the theory of acting in concert for a crime . . . which requires a specific intent, unless he is shown to have the requisite specific intent. The specific intent may be proved by evidence tending to show that the specific intent crime was a part of the common plan.

*State v. Blankenship*, 337 N.C. 543, 558, 447 S.E.2d 727, 736 (1994) (citations omitted), *overruled by State v. Barnes*, 345 N.C. 184, 481 S.E.2d 44, *cert. denied sub nom. Chambers v. North Carolina,* —— U.S. ——, 139 L. Ed. 2d 134 (1997), *and cert. denied,* —— U.S. ——, 140 L. Ed. 2d 473 (1998).[2] Under either an acting in concert or an aiding and abetting theory, joint participants in a crime can be convicted

---

1. We note that Cooke and Overton contend that their assault convictions should be reversed because the evidence was insufficient to show their specific intent to assault the Braswells; however, Cooke and Overton were convicted of assault with a deadly weapon inflicting serious injury, which does not contain a specific intent element. *See* N.C.G.S. § 14-32(b) (1993). Their argument on the assault crimes is therefore meritless. In any event, there is substantial evidence that the group's common plan included assaulting the Braswell's with an intent to kill.

2. Although our Supreme Court has overruled *Blankenship* insofar as it applies to the law on acting in concert, the law enunciated in *Blankenship* applies in this case since the crimes were committed prior to its renunciation. *See State v. Brice*, 126 N.C. App. 788, 793, 486 S.E.2d 719, 721 (1997) (applying *Blankenship* in order to avoid infringement of defendant's *ex post facto* rights). For crimes committed after the certification of the *Barnes* opinion on 3 March 1997, "[I]f 'two persons join in a purpose to commit a crime, each of them, if actually or constructively present, is not only guilty as a principal if the other commits that particular crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose . . . or as a natural or probable consequence thereof.' " *Barnes*, 345 N.C. at 233, 481 S.E.2d at 71 (quoting *State v. Erlewine*, 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991)).

only where each participant has the requisite *mens rea* for that crime. *State v. Reese*, 319 N.C. 110, 141-42, n.8, 353 S.E.2d 352, 370, n.8 (1987), *overruled in part by Barnes*, 345 N.C. 184, 481 S.E.2d 44 ("To the extent that . . . *Reese* . . . [is] inconsistent with [*Barnes*], [it is] hereby overruled.").

In this case, Childers' testimony revealed that she, Cooke, Overton, Roope, and Smith indeed had a common purpose to rob and kill all three Braswells. Childers testified that she, Cooke, and Roope initially discussed robbing Cooke's parents or her own parents, and that as the five of them (Childers, Cooke, Overton, Roope, and Smith) walked together towards their destination, she suggested her grandparents and uncle as alternative victims. After arriving at her grandparents' house, Childers testified that the five of them "huddled" outside and discussed robbing and killing her grandparents and uncle. All five went inside her grandparents' house. Robert Braswell's testimony revealed that Cooke was present as he and Childers' grandparents were repeatedly stabbed and were robbed, and that Overton stabbed and robbed Robert Braswell as Childers' grandparents were being stabbed and robbed down the hall. Robert Braswell further testified that he overheard Roope stating: "[R]emember . . . we decided no witnesses." This evidence tended to show that the specific intent crimes of first-degree burglary and armed robbery were part of the common plan formed by Childers, Roope, Overton, Cooke, and Smith. Accordingly, the evidence supports the convictions of both Cooke and Overton on acting in concert and/or aiding and abetting theories, because it reveals that Cooke and Overton each formed the requisite *mens rea* for first-degree burglary and armed robbery.

### III

[3] Our state has a "strong policy favoring the consolidated trials of defendants accused of collective criminal behavior." *Barnes*, 345 N.C. at 222, 481 S.E.2d at 64. The court must nonetheless deny joinder of codefendants for trial on motion of a defendant:

> a. If before trial, . . . it is found necessary to promote a fair determination of the guilt or innocence of one or more defendants; or

> b. If during trial, . . . it is found necessary to achieve a fair determination of the guilt or innocence of that defendant.

N.C.G.S. § 15A-927(c)(2) (1997). A trial court's ruling on questions of joinder or severance is discretionary and will not be disturbed absent

a showing of abuse of discretion. *State v. Carson*, 320 N.C. 328, 335, 357 S.E.2d 662, 666-67 (1987). A defendant seeking to overturn this discretionary ruling of the trial court must show that the joinder has deprived him of a fair trial. *State v. Porter*, 303 N.C. 680, 688, 281 S.E.2d 377, 383 (1981).

> Severance is not appropriate merely because the evidence against one codefendant differs from the evidence against another. The differences in evidence from one codefendant to another ordinarily must result in a conflict in the defendants' respective positions at trial of such a nature that, in viewing the totality of the evidence in the case, the defendants were denied a fair trial. However, substantial evidence of the defendants' guilt may override any harm resulting from the contradictory evidence offered by them individually.

*Barnes*, 345 N.C. at 220, 481 S.E.2d at 62 (citations omitted).

In this case, Roope contends that the failure of the trial court to deny the State's motion for joinder was prejudicial error because "Roope was, in essence, subjected to prosecution, not only by the [S]tate, but by his own codefendants." Even assuming that the evidence presented resulted in a conflict in the defendants' respective positions at trial, there was substantial evidence of Roope's guilt. Each of the Braswells testified that they were stabbed by Roope, and all three were able to describe and identify Roope in court. Mrs. Braswell also testified that she watched as Roope repeatedly stabbed her husband. Childers testified that, prior to their entry into the Braswell home, Roope stated his intent to kill all three of the Braswells. Robert Braswell testified that he overheard Roope ordering his death, and that he overheard Roope remind Overton of their agreement to kill all the witnesses. Finally, Roope was driving Robert Braswell's stolen truck when the defendants were apprehended in Louisiana. This substantial evidence of Roope's guilt overrides any possible harm to Roope resulting from a joint trial. Accordingly, the trial court did not abuse its discretion in granting the State's motion for a joint trial of all three defendants.

IV

[4] Where prosecutors have chosen to try codefendants jointly, the United States Constitution forbids the use of a non-testifying defendant's out-of-court confession if that confession names and incriminates a codefendant. *Bruton v. United States*, 391 U.S. 123, 20

L. Ed. 2d 476 (1968). A trial court's limiting instruction to the jury that the out-of-court confession can only be considered against the confessor (and not against codefendants) is insufficient to protect the codefendants' Sixth Amendment right to cross-examine witnesses. *Id.* A defendant's out-of-court confession may be read into evidence at a joint trial, however, where the confession has been redacted so as to "omit all reference" to codefendants and to "omit all indication that *anyone* other than [the confessor and/or non-defendants] participated in the crime." *Richardson v. Marsh,* 481 U.S. 200, 203, 95 L. Ed. 2d 176, 183 (1987). Merely omitting a codefendant's name (by replacing it with an obvious blank space, a word such as "deleted," or some other obvious indication of alteration) from a confession which directly incriminates the codefendant violates that codefendant's constitutional rights. *Gray v. Maryland,* —— U.S. ——, ——, 140 L. Ed. 2d 294, 301 (1998). "[B]lacking out the name of a codefendant not only 'would [be] futile. . . . [T]here could not [be] the slightest doubt as to whose names had been blacked out,' but 'even if there [were], that blacking out itself would have not only laid the doubt, but underscored the answer.'" *Id.* at ——, 140 L. Ed. 2d at 301-02 (quoting *United States v. Delli Paoli,* 229 F.2d 319, 321 (2d Cir. 1956)). "The blank space in an obviously redacted confession . . . points directly to the [non-confessing codefendant], and it accuses the [codefendant] in a manner similar to . . . a testifying [defendant's] accusatory finger." *Id.* at ——, 140 L. Ed. 2d at 302.

The unconstitutional redaction at issue in *Gray* stated in part:

"Question: Who was in the group that beat Stacey?

"Answer: Me, deleted, deleted, and a few other guys."

*Id.* at ——, 140 L. Ed. 2d at 303. The *Gray* Court suggested the following constitutionally permissible redaction:

"Question: Who was in the group that beat Stacey?

"Answer: Me and a few other guys."

*Id.*

In this case, Overton's confession, as redacted and read to the jury, stated in pertinent part:

I think James and "blank" went in there and stabbed them and cut them up. It looked like somebody just went in there with a knife and just started hacking at a piece of meat . . . . "Blank" cut

the phone [cords] . . . so they wouldn't work . . . . And I think "blank" came up with a total of six hundred dollars and the young lady, she, came up with I think close to a thousand dollars cash . . . .

We first note that Cooke has abandoned this issue by failing to argue it in his brief. *See* N.C.R. App. P. 28(b)(5) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned."); *State v. Davis*, 68 N.C. App. 238, 245, 314 S.E.2d 828, 833 (1984) (issue not addressed in defendant's brief deemed abandoned). We therefore only address the constitutionality of the admission of Overton's redacted out-of-court confession as it relates to Roope.

Overton's confession directly accuses Roope of participation in the charged crimes. The confession was impermissibly redacted by merely replacing Roope's name with the word "blank." Regardless of the trial court's limiting instruction, therefore, the admission of Overton's out-of-court confession, as thus redacted, violated Roope's Sixth Amendment rights.

"A violation of the defendant's rights under the Constitution of the United States is prejudicial unless the appellate court finds that it was harmless beyond a reasonable doubt." N.C.G.S. § 15A-1443(b) (1997) (placing the burden to show harmlessness on the State). Overwhelming evidence of a defendant's guilt may render a constitutional error harmless beyond a reasonable doubt. *Harrington v. California*, 395 U.S. 250, 23 L. Ed. 2d 284 (1969); *State v. Autry*, 321 N.C. 392, 400, 364 S.E.2d 341, 346 (1988).

In this case, as discussed above in Issue III, there was overwhelming evidence of Roope's guilt from sources other than Overton's confession. Accordingly, although it was constitutional error for Overton's improperly redacted out-of-court confession to be read into evidence in a joint trial, the error was harmless beyond a reasonable doubt, and therefore does not require a new trial.

No error.

Judges MARTIN, Mark D. and TIMMONS-GOODSON concur.