STATE OF NORTH CAROLINA v. ORLANDO RAPHAEL CLARK

No. COA03-652

(Filed 6 July 2004)

**1. Constitutional Law— right to confrontation—nontestifying witness—*Crawford*—testimonial evidence**

A nontestifying witness's statement to an officer during the initial investigation and her later affidavit during questioning constituted testimonial evidence under *Crawford v. Washington*, 541 U.S. 36 (2004). The affidavit contained statements which implicated defendant and which were made under oath during police questioning. The fact that the initial statement was not under oath is not dispositive.

**2. Constitutional Law— right to confrontation—nontestifying witness—unavailable**

The trial court did not err by declaring a witness unavailable where the prosecutor informed the court that he had personally visited the scene, that the State had attempted to contact the witness through her friends, and that an officer had made several attempts to locate her. The State subsequently offered additional evidence regarding the witness's unavailability, including the officer's testimony.

**3. Constitutional Law— right to confrontation—nontestifying witness—prior testimony**

Defendant's Sixth Amendment right to confrontation was not violated by the admission of a nontestifying witness's prior testimony where defendant was present at the earlier trial, was represented by counsel, and had the opportunity to cross-examine the witness. The jury in the second trial heard the entire transcript, including the cross-examination about defendant's convictions, addictions, and any special treatment she received for her testimony.

**4. Constitutional Law— right to confrontation—nontestifying witness—statements to officer—admission harmless error**

There was harmless error in the admission of a nontestifying witness's statements to an officer and subsequent affidavit which identified defendant. Defendant did not have the opportunity to cross-examine the witness and the trial court failed to give an

instruction limiting the evidence to corroboration, but the error was harmless in light of the other evidence.

**5. Criminal Law— instructions on witness's criminal charges—granted in substance**

The trial court did not err by refusing to read to the jury a list of a nontestifying witness's prior and pending criminal charges. Defendant submitted the list before jury selection as support for a request to exclude the witness's testimony from a prior trial, but did not introduce the evidence at trial. General evidence of the witness's prior convictions was admitted through the prior testimony, and the court granted the request in substance by instructing the jury on consideration of prior convictions in determining credibility.

Judge WYNN concurring in the result.

Appeal by defendant from judgments entered 18 December 2002 by Judge James Floyd Ammons, Jr., in Cumberland County Superior Court. Heard in the Court of Appeals 16 March 2004.

*Attorney General Roy Cooper, by Assistant Attorney General Robert M. Curran, for the State.*

*Joseph E. Zeszotarski, Jr., for defendant-appellant.*

TYSON, Judge.

Defendant appeals from judgments entered after a jury found him to be guilty of robbery with a dangerous weapon and second-degree kidnapping. Following a second proceeding, the jury adjudicated defendant as having the status of being an habitual felon and a violent habitual felon. We affirm defendant's conviction and the trial court's judgments and hold that any error at trial was harmless beyond a reasonable doubt.

## I. Background

On 23 May 2001, Sarah DeBone ("DeBone") flew from her home in Michigan to Raleigh, North Carolina, and traveled by bus from Raleigh to Fayetteville. DeBone had not visited Fayetteville previously and was traveling to meet her fiancée, who was serving on active duty in the military and stationed near Fayetteville. Upon arrival at the Fayetteville bus station in mid-afternoon, DeBone walked outside the terminal to hail a taxi and was approached by defendant, who struck up a conversation with her.

STATE v. CLARK

[165 N.C. App. 279 (2004)]

DeBone told defendant she was visiting from Michigan and was waiting for a taxi to take her to the Fairfield Inn. Defendant falsely informed DeBone the Fairfield Inn was located within walking distance and offered to show her the way. DeBone consented, and defendant led her away from the bus station on foot. Several blocks away, defendant and DeBone encountered a woman, with whom defendant had a brief conversation.

As DeBone and defendant continued walking, she became apprehensive. DeBone told defendant she appreciated his help, but was returning to the bus station to get a taxi. Defendant promised the hotel was nearby, and DeBone relented. After they walked a short distance, defendant moved behind DeBone, grabbed her around the neck, and forced her to the ground. Defendant told DeBone not to move or talk because he had a gun. Defendant went through DeBone's belongings, stole her money, debit card, and compact disc player, and ran.

After lying on the ground until she was satisfied that defendant had fled, DeBone ran to the closest restaurant and called the police. Fayetteville Police Officer A.L. Black ("Officer Black") responded and drove DeBone through the area where she had walked. DeBone saw the woman whom defendant had spoken with earlier that day. Officer Black recognized the woman as Michelle Moore ("Moore"), a transient he had known for several years. Moore recognized DeBone as the woman she had seen walking with a male earlier that afternoon. Moore also stated she had known the man with DeBone for a couple of years, but informed Officer Black that she only knew him by his "street name" "C."

Fayetteville Police officers conducted an independent investigation to determine the identity of "C." Through this investigation, defendant was identified as a suspect. Moore later identified defendant as "C" in a photographic lineup. DeBone also identified defendant in a photographic lineup, and again at trial, as the man who led her away from the bus station and assaulted and robbed her.

Moore did not testify at trial. The trial court allowed the State to introduce her sworn testimony given in a prior trial against defendant, her identification of defendant, and her notarized statement to Officer Black. Defendant did not present any evidence. The jury convicted defendant of all charges, as well as having attained the status of an habitual felon and being a violent habitual felon. The trial court

**STATE v. CLARK**

[165 N.C. App. 279 (2004)]

sentenced defendant as a violent habitual felon to life imprisonment without possibility of parole. Defendant appeals.

## II. Issues

Defendant contends the trial court erred in: (1) allowing into evidence Moore's prior testimony, affidavit, and statements to Officer Black identifying defendant as DeBone's robber; and (2) refusing to instruct the jury regarding Moore's prior criminal history.

All of defendant's assignments of error directly challenge the admission of evidence from, and jury instructions regarding, a witness who was not physically present to testify at trial. After the briefs were filed, the United States Supreme Court addressed the issue of "whether [the admission of recorded statements to police] complied with the Sixth Amendment's guarantee that, '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.' " *Crawford v. Washington*, 541 U.S. 36, 38, 158 L. Ed. 2d 177, 184 (2004). As defendant's assignments of error directly relate to his Sixth Amendment right of confrontation, the United States Supreme Court's analysis in *Crawford* is controlling.

## III. Confrontation Clause

Defendant argues the trial court violated his Sixth Amendment right to confrontation by admitting Moore's: (1) testimony from a prior trial; (2) affidavit taken by Officer Black; and (3) statements identifying defendant during police questioning, without making proper findings of unavailability.

The Sixth Amendment right of confrontation applies to the States through the Fourteenth Amendment of the United States Constitution. *Barber v. Page*, 390 U.S. 719, 721, 20 L. Ed. 2d 255, 258 (1968). Our United States Supreme Court has held, " '[t]here are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.' " *Id.* (quoting *Pointer v. Texas*, 380 U.S. 400, 405, 13 L. Ed. 2d 923, 927 (1965)). "[T]here has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant." *Barber*, 390 U.S. at 722, 20 L. Ed. 2d at 258.

STATE v. CLARK

[165 N.C. App. 279 (2004)]

The United States Supreme Court recently revisited the Sixth Amendment Confrontation Clause in *Crawford*. After thoroughly discussing historical interpretations of the Confrontation Clause, the Supreme Court set forth the proper analysis to be applied and held, "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." *Id.* at 68, 158 L. Ed. 2d at 203.

Our review of whether defendant's Sixth Amendment right of confrontation was violated is three-fold: (1) whether the evidence admitted was testimonial in nature; (2) whether the trial court properly ruled the declarant was unavailable; and (3) whether defendant had an opportunity to cross-examine the declarant. *Id.*

## A. Testimonial Evidence

[1] The Sixth Amendment to the United States Constitution guarantees that "in all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Defendant contends the admission at trial of Moore's prior testimony, her affidavit taken during police questioning, and statements made to Officer Black identifying defendant violated his right of confrontation.

Defendant did not assign error to the trial court's admission of Moore's identification of defendant during a photographic lineup, nor does he assign error to the procedures used to obtain this evidence. Although defendant objected at trial, his failure to assign error precludes our review pursuant to N.C.R. App. P. 10 (2004). Defendant argues the admission of Moore's statements through *other witnesses*' testimony at trial violated his Sixth Amendment right to confrontation.

In *Crawford*, Justice Scalia wrote, " '[t]estimony,'. . . is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.' " 541 U.S. at 51, 158 L. Ed. 2d at 192 (quoting 1 N. Webster, An American Dictionary of the English Language (1828)). Although the Court in *Crawford* expressly declined to issue a comprehensive definition of "testimonial evidence," it clearly held that prior testimony in a former trial and statements made during "police interrogations" constitute testimonial evidence. *Id.* at 52, 158 L. Ed. 2d at 193. Under *Crawford*, Moore's testimony in an earlier trial is "testimonial evidence." *Id.*

The Supreme Court declined to define "police interrogation," and stated in footnote four, "[j]ust as various definitions of 'testimonial' exist, one can imagine various definitions of 'interrogation,' and we need not select among them in this case." *Id.* at 53, 158 L. Ed. 2d at 194 n. 4. Further, a witness's "recorded statement, knowingly given in response to structured police questioning, qualifies under any conceivable definition." *Id.* Moore's affidavit, which contains recorded statements implicating "C," who was later identified as defendant, and made under oath during police questioning, constitutes "testimonial evidence."

Moore's statements to Officer Black made during his initial investigation are also testimonial evidence. The fact that this statement was not made "under oath" is not dispositive. *See id.* at 52, 158 L. Ed. 2d at 193 ("Police interrogations bear a striking resemblance to examinations by justices of the peace in England. The statements are not *sworn* testimony, but the absence of oath was not dispositive."). Here, as in *Crawford*, "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* at 51, 158 L. Ed. 2d at 192; *see also Moody v. State*, 594 S.E.2d 350, 354 n. 6 (Ga. 2004) (Although the *Crawford* Court declined to define the term "testimonial," "it appears that the term ['testimonial'] encompasses the type of field investigation of witnesses at issue here."). Moore's prior testimony, affidavit, and statements to police are testimonial in nature and require further analysis under *Crawford* to determine their admissibility.

## B. Unavailability

[2] Under *Crawford*, the State is required to present evidence of and the trial court must find Moore is unavailable at trial for her statements to be admitted. *See Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203. Rule 804 of the North Carolina Rules of Evidence creates a hearsay exception and allows admission of prior testimony into evidence if the declarant is unavailable. N.C. Gen. Stat. § 8C-1, Rule 804(b)(1) (2003). Rule 804 lists several definitions for "unavailability as a witness," including situations where the declarant "[i]s absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means." N.C. Gen. Stat. § 8C-1, Rule 804(a)(5) (2003).

In *State v. Triplett*, our Supreme Court held, "[t]he trial judge's determination of unavailability in such cases must be supported by a

finding that the declarant is [unavailable], which finding in turn must be supported by evidence of [unavailability]." 316 N.C. 1, 8, 340 S.E.2d 736, 740 (1986). "The degree of detail required in the finding of unavailability will depend on the circumstances of the particular case." *Id.*

In *State v. Nobles*, our Supreme Court ruled that the prosecution's statements about its attempts to find the witness were insufficient to conclude that a good-faith effort was made and held the trial court erred in admitting the evidence. 357 N.C. 433, 584 S.E.2d 765 (2003). The Court stated that, as an appellate court, it had to determine whether the prosecution met its burden of establishing that the witness was constitutionally unavailable to testify. *Id.* at 437, 584 S.E.2d at 769. The Court also said, "[t]urning to the facts . . ., the transcript provides little insight as to whether the state undertook any effort whatsoever to produce [the witness]." *Id.* at 438, 584 S.E.2d at 770. The State asserted the witness was not located within the state and had been unwilling to come back four years ago for previous proceedings. *Id.*

> Second, the state did not present a witness to testify, offer other evidence, or otherwise demonstrate good-faith efforts to locate and present [the witness]. Accordingly, the state did not adequately demonstrate, on this record, that [the witness] was constitutionally unavailable to testify in person before the jury.

*Id.* at 439, 584 S.E.2d at 770. Our North Carolina Supreme Court concluded, "[t]he state's failure to undertake good-faith efforts to locate and produce [the witness] constitutes reversible error," however, the Court limited its holding to "the facts and circumstances of the present case." *Id.* at 441, 584 S.E.2d at 771.

During a hearing on motions *in limine*, the State moved to have Moore declared to be unavailable as a witness. The prosecuting attorney informed the trial court that he had personally visited the areas Moore frequented and that the State had attempted to contact Moore through her friends. He also asserted Officer Black made several attempts to locate Moore. The State informed the trial court and defendant that it planned to offer into evidence Moore's prior testimony, affidavit, and statements identifying defendant.

Defense counsel objected to the State's motion to declare Moore unavailable and requested the trial court to exclude her testimony and statements. Defendant does not assign error to the admission of

Moore's identification of defendant in a photographic lineup. Defense counsel also submitted proposed jury instructions on Moore's prior convictions if the trial court declared her unavailable and admitted her prior testimony. Without hearing evidence or conducting *voir dire*, the trial court granted the State's motion to declare Moore unavailable and denied defendant's motion for proposed jury instructions.

The trial court must receive substantial supporting evidence before making a finding of unavailability. *See id.* at 439, 584 S.E.2d at 770; *see also Tripplett*, 316 N.C. at 8, 340 S.E.2d at 740. Although the State informed the court of its efforts to locate Moore, it did not "present a witness to testify" or "offer other evidence" at the motion hearing. *See Nobles*, 357 N.C. at 439, 584 S.E.2d at 770.

We note that during defendant's objection to the State's motion to declare Moore unavailable, defense counsel conceded, "I can't find her." Defense counsel's statement during his *objection* to the State's motion that *he* could not locate Moore does not relieve the State of *its* burden to produce evidence showing it has been "unable to procure [Moore's] attendance . . . by process or other reasonable means." N.C. Gen. Stat. § 8C-1, Rule 804(a)(5); *see also Nobles*, 357 N.C. at 440, 584 S.E.2d at 771.

A review of the transcript reveals that prior to the admission of Moore's prior testimony *at trial*, the State offered additional evidence regarding Moore's unavailability, including Officer Black's testimony that he had "repeatedly" tried to locate Moore. The prosecutor's statements regarding its efforts to locate Moore corroborate Officer Black's testimony and sufficiently demonstrate the State's good-faith efforts to procure Moore in order for the trial court to declare her unavailable. We hold the trial court did not err in declaring Moore to be unavailable to testify during defendant's trial at bar.

### C. Cross-Examination

To determine whether the trial court properly admitted Moore's prior testimony, prior statements to police, and her affidavit, our analysis turns to whether defendant had an opportunity to cross-examine Moore regarding the evidence presented against him. *Crawford*, 541 U.S. at 68, 158 L. Ed. 2d at 203. In *Crawford*, the Supreme Court ruled it was error for the trial court to admit the unavailable witness's tape recorded statement taken during police investigation and describing *defendant's commission of the crime*

STATE v. CLARK

[165 N.C. App. 279 (2004)]

because the defendant had no opportunity to cross-examine during the witness's prior statement to the police. *Id.* We next consider whether defendant was afforded an opportunity to cross-examine Moore during her prior testimony or regarding her affidavit and statements to Officer Black.

## 1. Prior Testimony

[3] The trial court admitted Moore's prior testimony, given under oath in an earlier trial, regarding the incident at bar. At the earlier trial, defendant was present, represented by counsel, had an opportunity to cross-examine Moore, and, through his counsel, did cross-examine her. Moore's entire testimony from the earlier trial was admitted and read into evidence in the jury's presence. The jury also heard defense counsel's prior cross-examination regarding Moore's convictions for "numerous drug offenses" and "prostitution," addictions to drug and alcohol that required her to be institutionalized, and any potential bias or special treatment she received from the State for testifying against defendant.

We hold that Moore's prior testimony, which was given at an earlier trial where defendant was present and cross-examined the witness, satisfies the cross-examination requirement under *Crawford.* *See id.*

Moore's prior testimony was properly admitted under Rule 804. Since the State satisfied the requirements set forth in *Crawford,* we hold defendant's Sixth Amendment right of confrontation was not violated by the admission of Moore's prior trial testimony at bar. *See Crawford,* 541 U.S. at 68, 158 L. Ed. 2d at 203.

## 2. Statements to Police

[4] Defendant argues the trial court erroneously admitted Moore's affidavit and her statements identifying defendant to Officer Black during his investigation.

Immediately following the incident, DeBone and Officer Black returned to the area where she and her assailant had walked. While riding with Officer Black, DeBone identified the woman whom she and her assailant had met earlier on the street. Officer Black recognized the woman as Moore and engaged in a brief conversation with her. During this initial investigation, Moore made statements to Officer Black identifying the man walking with DeBone earlier as "C," but stated she did not know his legal name.

Later that day, Moore signed an affidavit, under oath, which was witnessed by and given in the presence of Officer Black and signed before a notary. Her affidavit indicated that she had known "C" for a couple of years and identified him as the man walking with DeBone on 23 May 2001.

As in *Crawford*, defendant here did not have the opportunity to cross-examine Moore during her statements to Officer Black or the taking of her affidavit. The State argues Moore's affidavit and statements to Officer Black were not admitted to prove the truth of the matter asserted but as corroborating evidence of Moore's prior testimony. In *Crawford*, the Supreme Court noted, "[t]he [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. at 59, 158 L. Ed. 2d at 197-98 n. 9 (citing *Tennessee v. Street*, 471 U.S. 409, 414, 85 L. Ed. 2d 425, 105 S. Ct. 2078 (1985)). In *Tennessee v. Street*, the Supreme Court ruled that the admission of an accomplice's out of court confession was not error because the accomplice's statement was admitted for the nonhearsay purpose of rebutting defendant's testimony. 471 U.S. at 414, 85 L. Ed. 2d at 431. The Court reasoned, "[t]he Clause's fundamental role in protecting the right of cross-examination, *see Douglas v. Alabama*, 380 U.S. 415, 418, [13 L. Ed. 2d 934, 937] (1965), was satisfied by Sheriff Papantoniou's presence on the stand. If [the defendant's] counsel doubted that [the accomplice's] confession was accurately recounted, he was free to cross-examine the Sheriff." *Tennessee*, 471 U.S. at 414, 85 L. Ed. 2d at 431. In *Tennessee v. Street*, however, the jury "was pointedly instructed by the trial court 'not to consider the truthfulness of [the accomplice's] statement in any way whatsoever.' " 471 U.S. at 414-15, 85 L. Ed. 2d at 431.

Here, the trial court failed to give the jury a limiting instruction. Because the jury could have considered this evidence for the truth of the matter asserted, we cannot presume it was offered and received as corroborating evidence. The admission of this evidence must be analyzed under *Crawford* as if it was offered and received to prove the truth of the matter asserted.

Although Moore's affidavit and statements may have corroborated her prior testimony, without a limiting instruction to the jury not to consider the evidence for the truth of the matter asserted, *i.e.*, whether defendant was DeBone's assailant, the admission of this evidence without affording defendant an opportunity to cross-examine Moore is error.

STATE v. CLARK

[165 N.C. App. 279 (2004)]

## D. Harmless Error

Because defendant's constitutional right was violated through the admission of Moore's prior statements to Officer Black and her affidavit, the State has the burden of proving the error was harmless beyond a reasonable doubt to sustain defendant's conviction. N.C. Gen. Stat. § 15A-1443(b) (2003); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 684, 89 L. Ed. 2d 674, 686 (1986) ("The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt."); *State v. Sisk*, 123 N.C. App. 361, 370, 473 S.E.2d 348, 354 (1996), *aff'd in part and disc. rev. improvidently allowed in part*, 345 N.C. 749, 483 S.E.2d 440 (1997) (citing N.C. Gen. Stat. § 15A-1443).

"In order for this Court to find that the error affecting defendant's constitutional rights was harmless beyond a reasonable doubt, we must determine that the error had no bearing on the jury deliberations." *Sisk*, 123 N.C. App. at 370, 473 S.E.2d at 354. "Overwhelming evidence of a defendant's guilt [without regard to the erroneously admitted evidence] may render a constitutional error harmless beyond a reasonable doubt." *State v. Roope*, 130 N.C. App. 356, 367, 503 S.E.2d 118, 126, *disc. rev. denied*, 349 N.C. 374, 525 S.E.2d 189 (1998) (citing *Harrington v. California*, 395 U.S. 250, 23 L. Ed. 2d 284 (1969); *State v. Autry*, 321 N.C. 392, 400, 364 S.E.2d 341, 346 (1988)).

DeBone, the victim, testified at trial regarding the events that occurred on 23 May 2001. A man approached her after she arrived at the Fayetteville bus station between 3:30 p.m. to 4:30 p.m. on a clear, spring day. He offered to walk with her to her hotel, which he falsely informed her was within walking distance. DeBone walked and talked with defendant for approximately twenty-five to thirty-five minutes in clear daylight. As DeBone reported the incident to police immediately after she was assaulted and robbed, she recalled several identifying characteristics of her assailant, including his sex, race, weight, and "crooked teeth." Prior to defendant assaulting and robbing her, they stopped and talked to a woman on the street. Following the robbery, DeBone and Officer Black retraced the path she had taken with her robber. While riding with Officer Black, DeBone quickly identified the woman whom she and her assailant had met earlier on the street. DeBone asked Officer Black to stop his vehicle, and he engaged in a brief conversation with the woman. That afternoon, Officer Black showed several photographs to DeBone.

Defendant's photograph was not included in the lineup. DeBone did not identify her assailant and robber from the photographs she was shown.

After DeBone returned to Michigan, the Fayetteville Police Department conducted an independent investigation to determine the robber's identification. After determining that defendant was a suspect, the Fayetteville Police Department contacted Ottawa County Sheriff's Detective Timothy Raha ("Detective Raha") in Michigan to request his assistance in a photograph identification procedure. Detective Raha testified at defendant's trial that he met with DeBone at her place of work two weeks after the incident, around 4:25 p.m. on 7 June 2001. He showed DeBone a photographic lineup of six men and read to her the accompanying "Photo Identification Procedure" document.

DeBone testified she was instructed to take her time and not to rush. She stared at the photographs for less than ten minutes before identifying defendant as her robber. DeBone also testified she felt a "sick feeling in my stomach when I kept going back to [defendant's] picture," and that she "remembered his face at the Greyhound bus station." In identifying the robber in the photo array, DeBone signed below defendant's photograph. DeBone also identified defendant as her assailant and robber at trial.

In addition to the victim's identification of defendant, Moore also identified defendant in a photographic lineup as the man she saw walking with DeBone on 23 May 2001. While Moore's statements to Officer Black and her affidavit are inadmissible, her identification of defendant in a photographic lineup was not assigned as error and serves as additional evidence implicating defendant as the robber.

Defendant did not object to or move to strike any of the identification procedures for either DeBone or Moore. Excluding Moore's prior statements to Officer Black and her affidavit, the State presented overwhelming evidence of defendant's guilt.

This evidence taken together with the testimony and identification made *twice* by the victim, who had walked and talked with defendant for around thirty minutes on a clear afternoon, renders the admission of Moore's statements and affidavit in violation of defendant's Sixth Amendment right to confront the witnesses against him harmless. We hold the admission into evidence of Moore's affidavit and her prior statements to Officer Black implicating defendant were harmless beyond a reasonable doubt.

## IV. Jury Instruction

**[5]** Defendant contends the trial court erred in denying his request to read to the jury, during jury instructions, a list that specifically set forth all of Moore's prior and pending criminal charges. We disagree.

"It is well established that a request for a specific instruction which is correct in law and supported by the evidence must be granted at least in substance." *State v. Williams*, 98 N.C. App. 68, 71, 389 S.E.2d 830, 832 (1990). "[T]he trial judge is not required to give the requested instruction verbatim." *Id.* "Where specific instructions requested are not supported by the evidence, the trial judge does not err in failing to give such instructions verbatim or in substance." *State v. Hall*, 57 N.C. App. 544, 546, 291 S.E.2d 873, 875, *disc. rev. denied*, 305 N.C. 761, 293 S.E.2d 593 (1982).

Prior to selecting the jury, defense counsel submitted to the court a copy of Moore's Cumberland County criminal record check, a document that showed she had been arrested twenty times, and certified copies from the Cumberland County Clerk of Court showing Moore's pending charges. He presented these documents as "supporting data" for his request to "exclude [Moore's] testimony" and moved that these documents be "made part of the record." Defense counsel never moved to have the trial court read or publish these documents to the jury during trial. Following the close of the State's case-in-chief, defense counsel moved to dismiss the charges and informed the trial court, "We've chosen not to present evidence in this case." Defendant did not seek to introduce Moore's prior record into evidence for impeachment or other purposes.

Some general evidence of Moore's prior convictions and bad acts was admitted into evidence and presented to the jury through the admission of Moore's prior testimony and cross-examination. We previously held that the admission of this prior testimony was not error. Moore's prior testimony referenced generally her "numerous drug offenses" and her abuse of and addictions to drug and alcohol. In this testimony, Moore admitted these drug offenses and addictions, specifically stating that she had been convicted of "possession of narcotics, drug paraphernalia, prostitution, you name it."

During the charge conference, defense counsel requested the trial court "instruct" the jury by reading each of Moore's fourteen prior convictions and charges in Cumberland County, along with the corresponding conviction date. Although the details of Moore's prior

charges were made part of the record during pretrial motions, defendant did not move to admit these documents into evidence. The trial court was not required to submit verbatim this requested instruction to the jury in the absence of their admission into evidence. *Hall,* 57 N.C. App. at 546, 291 S.E.2d at 875.

Even if Moore's prior testimony supported defendant's requested instruction, the trial court granted his request in substance. *See Williams,* 98 N.C. App. at 71, 389 S.E.2d at 832. The trial court instructed the jury:

> [W]hen evidence has been received tending to show that a witness has been convicted of criminal charges, you may consider this evidence for one purpose only. . . . in deciding whether you believe or disbelieve his or her testimony at this trial. . . .

Although the trial court denied defendant's specific request, it instructed the jury on its ability to consider a witness's prior convictions in determining her credibility as a witness. The trial court's instruction, in substance, addressed defendant's concern over Moore's criminal history, credibility, and the jury's ability to determine what weight to give her testimony. Portions of Moore's criminal past and her history of drug and alcohol abuse were presented to the jury through the admission of her prior testimony and cross-examination. The trial court did not err in denying defendant's request for jury instructions. This assignment of error is overruled.

## V.  Conclusion

Defendant's Sixth Amendment right of confrontation was not violated when the trial court admitted Moore's prior testimony into evidence, as this prior testimony was subject to cross-examination and satisfied the United States Supreme Court's ruling in *Crawford.* The trial court erred in admitting Moore's testimonial affidavit and statements given during police questioning as corroborating evidence without giving the jury a limiting instruction. This evidence violated defendant's right to confrontation. We hold the evidence and record shows this error was harmless beyond a reasonable doubt. The trial court did not err in failing to give defendant's requested jury instruction where the evidence did not support such instruction and the trial court did instruct the jury that it could use Moore's prior criminal record and bad acts in determining her credibility. Defendant's convictions and the trial court's judgments and sentence are affirmed.

**STATE v. CLARK**

[165 N.C. App. 279 (2004)]

Harmless error. Judgments and sentence affirmed.

Judge HUNTER concurs.

Judge WYNN concurs in the result only by separate opinion.

WYNN, Judge concurring in the result.

I agree with the majority that, even if the trial court erroneously admitted the testimonial statements in violation of *Crawford*, such error was harmless in light of the overwhelming evidence of Defendant's guilt. I do not agree with the majority's discussion of *Crawford*, however, and I therefore concur in the result only.

In this case, the majority opinion analyzes multiple issues in light of *Crawford*, but ultimately concludes that all such errors were harmless. Inasmuch as the United States Supreme Court deliberately left its holding in *Crawford* with unsettled issues, and the errors in this case were harmless, I believe the majority's lengthy *Crawford* analysis is unnecessary to resolution of the case. Indeed, it is fundamental that our appellate courts should refine opinions to address only the issues necessary for resolution of each case. The Court thereby avoids the multiple evils of advisory opinions, questionable dicta, and other unnecessary expressions of views that may tie the Court's hands in future cases or cause confusion among the state bar. *See, e.g., Smith v. Norfolk & S. R.R. Co.*, 114 N.C. 728, 749-50, 19 S.E. 863, 869 (1894) (warning that, "it may be safely remarked that no science is more dependent upon the accuracy of its terms and definitions than that of the law. Looseness of language and dicta in judicial opinions, either silently acquiesced in or perpetuated by inadvertent repetition, often insidiously exert their influence until they result in confusing the application of the law, or themselves become crystallized into a kind of authority which the courts, without reference to true principle, are constrained to follow."); *Currie v. Worthy*, 48 N.C. (1 Jones Eq.) 315, 319-20 (1856) ("dicta do not fix the law; and I will take occasion to say, that the habit in which Judges, particularly on this side of the Atlantic, indulge, of writing *dissertations* instead of confining themselves to the point presented by the case, which is done either to display their learning or to save others from the trouble of thinking, so far from tending to fix the law, tends to unsettle it, and create confusion."); Thomas Fowler, *Are Unnecessary "Holdings" Dicta?*, North Carolina State Bar Journal, Summer 2003 (noting that, "In light of the widespread use of electronic legal

research, it may be more important than ever for appellate judges to clearly state in their opinions what their holding is, and to avoid discussions of matters that are not necessary to that holding); Michael C. Dorf, *Dicta and Article III*, 142 U. Pa. L. Rev. 1997, 2004 (1994) (discussing the difficulties arising from the lack of consistency among courts as to the proper scope of judicial holdings).

Since, for the sake of argument, we could assume there was error and dispose of this matter under a harmless error analysis, I believe it imprudent to, for instance, set forth a *Crawford* "three-fold" test with attending "prongs." *Crawford* is a momentous case handed down by the United States Supreme Court only four months ago. This Court, like federal and state courts across the country, will be addressing the impact of *Crawford* on countless individual cases to come. The significance of *Crawford* should be allowed time to develop and mature on a case-by-case basis with the benefit of briefs and arguments by litigants. It is premature to attempt to fashion a definitive *Crawford* "test" to be applied in all cases. For these reasons, I respectfully concur in the result only.